UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:03-CV-181-R

HAROLD BROOKS LEASURE, PLAINTIFF

v.

AA ADVANTAGE FORWARDERS, et. al., DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on the Defendant Coleman American Companies, Inc.'s ("Coleman") Motion for Attorneys' Fees and Costs (Docket #194). The Plaintiff, Harold Brooks Leasure ("Leasure") has responded to that motion (Docket #197) and has filed a Motion to Strike the Motion for Attorneys' Fees and Costs (Docket #198). The Defendants have replied to that response and motion (Docket #200). This matter is now ripe for adjudication. For the following reasons, the Plaintiff's Motion to Strike is **DENIED**. For the reasons discussed below, the Court will refrain from ruling on the Defendant's Motion for Attorneys' Fees and Costs at this time.

**PROCEDURAL HISTORY AND BACKGROUND**

On August 11, 1999, Coleman filed a complaint against Leasure in the Circuit Court of Christian County, Kentucky, alleging breach of contract, breach of implied covenants of good faith and fair dealing, fraud, and fraudulent concealment, all relating to the purchase of Leasure's businesses. On May 5, 2000, the state court granted partial summary judgment in favor of Coleman on its breach of contract claim, awarding Coleman $691,913.88.[1]

---

[1]The state court amended its order in March 2001, holding that the award of damages be treated as a set-off against the purchase price that Coleman was to pay under the contract.

During the course of the state court proceedings, Leasure filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Western District of Kentucky, on July 31, 2000.  Coleman, as a creditor of Leasure, filed several motions with the bankruptcy court, including: 1) a motion for relief from stay to allow the state court proceeding in state court to go forward; 2) a motion to appoint a trustee pursuant to 11 U.S.C. § 1104; 3) a Motion to Dismiss pursuant to 11 U.S.C. § 1112; and 4) a motion to convert the case from Chapter 11 to Chapter 7.

Following three (3) days of testimony, the Bankruptcy Court, the Honorable J. Wendell Roberts, issued findings of fact and conclusions of law, pursuant to Bankruptcy Rule 7052, which included: 1) Leasure had received payment on $245,950.00 worth of accounts receivable (AR), and did not inform Coleman and/or pass the money to Coleman prior to the execution of the contract; 2) Leasure had inflated the value of AR in an amount of $43,937.72, by including duplicate listings; 3) Leasure had inflated the value of AR in an amount of $83,876.14; 4) in certifying the value of his accounts payable (AP), Leasure failed to mention a promissory note payable to First United Bank in the amount of $59,000.00; 5) in certifying the value of its AP, Leasure failed to disclose that one of his corporations had signed a guarantee of Leasure's personal debt in the amount of $1,075,000.00; and 6) the Court found that Leasure's conduct amounted to bad faith in regards to his business affairs and his preparation and filing of his bankruptcy petition.

On August 11, 2003, Leasure filed a complaint against Coleman and ten other business entities and six persons in this Court, alleging violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO").  Leasure alleged that the Defendants represent a RICO enterprise that defrauded him out of his businesses in order to add them to their RICO enterprise.

Leasure further alleged that the Defendants perpetrated these acts in concert, through mail and wire fraud. Leasure also contended that the Defendants failed to timely pay him for services rendered under a Department of Defense Personal Property Program.

On October 15, 2004, the Kentucky Court of Appeals affirmed in part and reversed in part the state court's order granting partial summary judgment. The Court of Appeals remanded the case for a jury trial for issues related to proof of the amount of damages sustained by Coleman. In February 2006, the state court trial took place in the circuit court of Christian County, Kentucky. The jury returned a verdict in favor of Coleman against Leasure for breach of contract and fraud, awarding Coleman $418,065.72 in damages. Leasure has since appealed this decision to the Kentucky Court of Appeals.

On March 23, 2007, this Court entered an Order granting summary judgment in favor of all the Defendants and dismissing all of Leasure's claims against them, finding that: (1) Leasure could not prove that the Defendants proximately caused his alleged injuries because his theories of causation were not supported by the evidence; (2) Leasure could not recover under RICO based on the alleged injuries sustained by the United States Government because he did not provide any evidence and/or explain how he was injured by the Defendants' alleged conduct against the United States Government; (3) Leasure's "playing the float" claim against the Defendants was not only time-barred by the four-year statute of limitations, but was also precluded because he could not recover under RICO for injuries sustained by third parties; (4) the doctrine of collateral estoppel precluded Leasure's claims from being re-litigated before this Court; (5) Leasure's claims were barred by the doctrine of claim preclusion; and (6) Leasure could not prove a pattern of racketeering because he could not meet the continuity requirement

of RICO, Section 1962(c).

Coleman now seeks an order from this Court compelling Leasure to compensate it for attorneys' fees, litigation expenses, and costs incurred in defending this case, requesting $262,919.15 in attorneys' fees and $39,920.65 in litigation expenses and costs, for a total award of $302,839.80.

## DISCUSSION

### 1. Attorneys' Fees and Costs

Prevailing defendants have no right to recovery attorneys' fees under the RICO statute itself. *See* 18 U.S.C. § 1964(c) (2007). The statute provides that "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." *Id.* This provision permits only prevailing plaintiffs to recover attorneys' fees. *Chang v. Chen*, 95 F.3d 27, 28 (9th Cir. 1996); 18 U.S.C. § 1964(c).

This provision, however, "does not preclude prevailing defendants from recovering attorneys' fees when authorized elsewhere" and therefore "does not preclude prevailing defendants from recovering attorneys' fees when specified by an agreement of the parties." *Id*. Although there are no Supreme Court or Sixth Circuit cases addressing this issue, *Chang's* reasoning is applicable to the instant case. In spite of the fact that Coleman is the prevailing party in the RICO action, § 1964(c) does not warrant granting it attorney's fees. Coleman is "not precluded, however, from asserting other grounds for recovery of attorneys' fees as long as those grounds are independent of the RICO statute." *Liberty Mut. Ins. Co. v. Employee Res. Mgmt., Inc.*, 176 F. Supp. 2d 510, 543 (D.S.C. 2001) (citing *Chang*, 95 F.3d at 28). Coleman has done

so.

As 18 U.S.C. § 1964(c) does not preclude prevailing defendants in a RICO action from recovering attorneys' fees when such an award is specified by an agreement of the parties, Coleman asserts that the Court must look to the Stock Purchase and Sale Agreement between the parties, and specifically ¶19 "Legal Fees and Expenses" in order to determine whether an award of attorneys' fees and costs in proper.

In relevant part, the contract reads:

> In the event a dispute occurs among the parties *concerning this Agreement* or any part thereof, the prevailing party in any litigation regarding same shall be entitled to its legal fees, courts costs and any witness, deposition or other costs. (emphasis added)

Coleman argues that "the essential gravamen of Leasure's RICO claims against [Coleman] arose out of and 'concerned' the [Purchase and] Sale Agreement," because Leasure claimed that Coleman "stole" Leasure's business in that Coleman executed the Sale Agreement but never intended to compensate Leasure for the business, later procuring a judgment against him in the Circuit Court of Christian County, Kentucky, by fraud. In response, Leasure argues that his RICO action was much broader than simply an action "concerning the agreement" and that the alleged RICO enterprise and pattern was not based upon and did not solely concern the Agreement.

The Court agrees that this entire action centered on the June 1999 contract between Coleman and Leasure for the purchase of Leasure's businesses. Soon after Coleman took possession of the companies it purchased from Leasure, it discovered numerous problems with Leasure's financial records that Leasure had not disclosed prior to the purchase. Coleman subsequently filed suit against Leasure and obtained partial summary judgment against him.

Leasure then filed suit in this Court against Coleman, ten other business entities, and six person, alleging that the Defendants represent a RICO enterprise that defrauded him out of his businesses in order to add them to their RICO enterprise.

As this Court previously found, Leasure made unsubstantiated claims about the existence of a RICO enterprise among the Defendants. He also rested his allegations on the unsubstantiated claim that Coleman agreed to purchase Leasure's businesses so that it could alter his financial records to make it appear as if he had overstated his accounts receivable, allowing it to then sue and obtain a judgment against him. As this Court held, Leasure provided no evidence that Coleman sought to defraud him out of his business or that any of the other Defendants worked to defraud him in any way.[2] Despite Leasure's assertions that the "theft" of his business was only one aspect of the overall operation and illegal actions of the RICO enterprise among the sixteen Defendants, he did not produce any evidence that any of the Defendants were engaged in a RICO scheme of any kind or were the proximate cause of his alleged injuries.

Thus, the only basis for Leasure's allegations of the existence of a RICO scheme among the Defendants were the events that transpired between Coleman and himself pursuant to the June 1999 contract. There was no other evidence produced. Therefore, the Court finds that this

---

[2] In fact, in this Court's memorandum opinion accompanying its order granting summary judgment to the Defendants, the Court does not mention any of the seventeen (17) Defendants by name other than Coleman American Companies, Inc., and its owner James Coleman. It was not necessary because Leasure presented no evidence against them and made no specific allegations concerning the other Defendants.

action was one "concerning" the Agreement. Therefore, Coleman is entitled to an award of attorneys' fees and costs. However, for the reasons discussed below, the Court cannot make a determination as to the appropriate award at this time.

**2. The Motion to Strike**

Leasure contends that Coleman's motion for attorneys' fees and costs should be stricken because Coleman has not supported the motion with a sufficient evidentiary basis. The Court does not agree that Coleman's motion should be stricken, but the Court does agree that Coleman has not yet provided this Court with a sufficient evidentiary basis on which to calculate a fee award.

Coleman moved for attorneys' fees pursuant to FED. R. CIV. P. 54(d)(2), which provides that attorneys' fees and costs may be awarded to a prevailing party in limited circumstances. To be eligible for attorneys' fees, a party must file a motion for attorneys' fees, which Coleman has done, and "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." FED. R. CIV. P. 54(d)(2)(B)(ii). Further, if a party claims any item of cost or disbursement, it must "through an affidavit, state that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." *Citizens Ins. Co. of Am. v. KIC Chems., Inc.*, 2007 U.S. Dist. LEXIS 73201, at *13 (W.D. Mich., Oct. 1, 2007) (citing 28 U.S.C. § 1924 (2007)). Here, as discussed above, Coleman seeks, and is entitled to, an award of attorneys' fees and costs based on the terms of Stock Purchase and Sale Agreement executed between Coleman and Leasure.

"The primary concern in an attorneys' fees case is that the fees awarded be reasonable."

*Citizens Ins. Co.*, 2007 U.S. Dist. LEXIS 73201, at *13 (citing *Blum v. Stenson*, 465 U.S. 886, 893 (1984)); *see also Soltysiak v. UNUM Provident Corp*., 480 F. Supp. 2d 970, 976 (W.D. Mich. 2007) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Once the court is persuaded that an award of attorneys' fees is appropriate, it starts with the "lodestar" method of calculating attorneys' fees. *Id.* In employing the lodestar method, the Court must first determine

> the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate....The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed....[As the court] should exclude from this initial fee calculation hours that were not "reasonably expended"...Counsel for the prevailing party should made a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.

*Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)). While Coleman is entitled to an award of attorneys' fees and costs, proper application of the lodestar method will entail more detailed information than Coleman has provided the Court.

In its motion for attorneys' fees and costs, Coleman attached summary schedules of the fees and costs incurred, but volunteered to provide the Court with detailed billing statements. Coleman then included those billing statements in its response to Leasure's motion to strike. These billing statements, however, run to over 150 pages, and do not appear to have been separated by legal professional, type of work, stage of case preparation, etc. It is not for the Court to sift through these statements line by line and determine what charges may reasonably be included in an award of attorneys' fees. Instead, this burden is on Coleman.

Further, after the lodestar has been determine, the Court may increase or decrease the award on the basis of twelve pertinent factors. These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6)

> whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[3]

*Blanchard v. Bergeron*, 489 U.S. 87, 90 n.5 (U.S. 1989) (citing *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)). Coleman has not provided the Court with any information that might be of assistance in using these factors to adjust the fee award.

The Court requires that Coleman present the affidavits and individual time records of each attorney who provided assistance in this case. Coleman should also submit what it believes to be a reasonable hourly rate for counsel and any paralegal who may have provided assistance in this case. "Hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Soltysiak*, 480 F.Supp.2d at 976 (quoting *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999)). The Court will require more than a conclusory statement in the affidavits regarding the "reasonable and customary hourly rate for professionals in this area of the law." *Id*. Coleman retained both local and out-of-state counsel in this matter, and should take this into consideration in providing this court with its reasonable hourly rate.

Further, Coleman must produce any information it believes may assist this Court in applying any of the twelve *Johnson* factors outlined above. In addition, the Circuit Court of Christian County, Kentucky has granted Coleman a fee award in the state court adjudication between Coleman and Leasure, Coleman must take care to exclude any billing statements or

---

[3]These are known as the *Johnson* factors, and are still good law although *Johnson* has been abrogated. *United States v. Ohio*, 474 F. Supp. 2d 916, 921 n.2 (S.D. Ohio 2007)

costs for work related to that case, or for any work unrelated to the specific issue at hand.

Finally, Coleman has failed to separate attorneys' fees and costs other than attorneys' fees, which FED. R. CIV. P. 54(d)(1) provides shall be given to the prevailing party unless the court directs otherwise. Coleman also has not submitted a bill of costs under 19 U.S.C. § 1920.[4] The Court requests that Coleman submit appropriate affidavits attesting to the award costs it is seeking under FED. R. CIV. P. 54(d)(1). See *Citizens Ins. Co.*, 2007 U.S. Dist. LEXIS 73201, at *13. While the Court is not issuing an opinion on the matter at this time, it does note that costs for meals and transportation, while routinely billed by law firms to clients, may not be necessary in the course of litigation, and may not be properly awarded here. See *Citizens Ins. Co.*, 2007 U.S. Dist. LEXIS 73201, at *25.

**CONCLUSION**

For the foregoing reasons, Leasure's Motion to Strike is **DENIED.** The Court declines to rule on Coleman's Motion for Attorney's Fees and Costs until such time as Coleman provides the Court with the required information. Coleman must supplement its Motion by December 1, 2007, Leasure may respond by December 31, 2007, and Coleman may reply by January 15,

---

[4] § 1920. Taxation of costs

A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title [28 USCS § 1923];
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 USCS § 1828].

2008. The movant shall notify the Court by letter, with a copy to opposing counsel, when this matter is ripe.

An appropriate order shall issue.

**Thomas B. Russell, Judge**
**United States District Court**

November 2, 2007