UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:03-CV-181-TBR

HAROLD BROOKS LEASURE                                                                    PLAINTIFF

v.

AA ADVANTAGE FORWARDERS, et. al.,                                                   DEFENDANT

## OPINION AND ORDER

This matter comes before the Court on Defendant Coleman American Companies, Inc.'s Supplement to its Motion for Attorneys' Fees (Docket #223). Plaintiff Harold Brooks Leasure has not responded. Per the Court's Orders issued on September 18, 2008 and September 24, 2008, respectively, Defendant's Motion for Attorneys' Fees and Costs (Docket #194), to which Plaintiff responded (Docket #197), and Defendant's Supplemental Motion for Attorneys' Fees and Costs (Docket #206), to which Plaintiff responded (Docket #215) and Defendant replied (Docket #216), are dismissed as moot, yet remain substantively considered for purposes of this motion. For the reasons that follow, Defendant's Motion for Attorneys's Fees is **GRANTED** in the amount of $226,122.18.

## BACKGROUND

This case originated as a RICO action. On March 23, 2007, the Court entered an Order granting summary judgment in favor of all Defendants, finding that Plaintiff's claims regarding the existence of a RICO enterprise among Defendants was unsubstantiated.[1] Defendant Coleman American Companies Inc. then moved to compel Plaintiff to compensate it for attorneys' fees,

---

[1] This decision was recently affirmed by the Sixth Circuit Court of Appeals in *Leasure v. AA Advantage Forwarders*, 276 Fed. App'x. 438 (6th Cir. 2008).

litigation expenses, and costs incurred in defending this case.  On November 2, 2007, the Court entered an Order finding that Defendant was entitled to an award of attorneys' fees, not as a prevailing party in a RICO action, but under the terms of the Stock Purchase and Sale Agreement executed between the parties.  However, the Court failed to grant Defendant's initial request for attorneys' fees due to the insufficiency of information provided.  In its April 7, 2008 Order, the Court admonished Defendant for again providing insufficient documentation upon which the Court could properly calculate an appropriate attorneys' fee award.  The Court requested that Defendant provide certain affidavits pertaining to the billing records for local counsel, R. Brent Vasseur; Wyrsch, Hobbs & Mirakian attorneys, Keith E. Drill, James R. Wyrsch, J. Justin Johnston; and other legal professionals who provided professional services on behalf of Defendant.  Defendant has complied and now requests fees in the amount of $242,848.93.

## STANDARD

"The primary concern in an attorney fee case is that the fee awarded be reasonable." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 893 (1984)).  In determining a reasonable attorneys' fee award, the Court must first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate.  *Id.*  The Court may then adjust that amount upward or downward by applying the twelve-factor test first articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and later adopted by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983).  *Id.* at 471-72.  The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to

acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)).

"The party seeking attorneys fees bears the burden of documenting his entitlement to the award." *Reed*, 179 F.3d at 472 (citing *Webb v. Dyer County Bd. of Educ.*, 471 U.S. 234, 242 (1985)). "The fee applicant 'should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.'" *Id.* (citing *Hensley*, 461 U.S. at 433). Significantly, the Supreme Court has reiterated that the resolution of a motion for attorneys' fees should not itself become a "second major litigation." *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 609 (2001); *Hensley*, 461 U.S. at 437.

## DISCUSSION

In his affidavit, Defendant's local counsel, R. Brent Vasseur, provides invoices spanning in time from September 2003 to July 2007. Vasseur is an attorney with the law firm of Boswell, Sims & Vasseur, PLLC located in Paducah, Kentucky. Over the entire course of this litigation, Vasseur billed at a rate of $125 an hour. In total, he billed $15,850.[2] Vasseur's invoices also include billing statements for professional services provided by several unknown individuals who are only identified by their initials. "MJD," who the Court assumes is a paralegal since his

---

[2]This represents 126.8 hours billed at $125 an hour.

3

or her services were billed at that rate, billed in total $487.50.[3] "JDB," who the Court assumes is a lawyer given his or her billing rate of $150 an hour, billed in total $422.50.[4] "VFS," likely another lawyer, billed in total $212.50.[5] It is unclear to the Court what work "TD" performed, but he or she billed in total only $16.[6] The invoices also include expenses incurred due to travel and other administrative costs that amount to $816.18. In sum, these billings amount to $17,804.68.

Defendant also provides the affidavits of James R. Wyrsch, J. Justin Johnston, Keith E. Drill, Michelle Dorrance, and Nathan Owings, all of whom practiced with the law firm of Wyrsch, Hobbs & Mirakian, P.C. in Kansas City, Missouri and worked on the case. James R. Wyrsch was counsel of record for Defendant and an equity shareholder of the firm. In his affidavit, Wyrsch explains that over the course of representing this case, his hourly rate increased commensurate with his experience, skill, and market increases within the Kansas City metropolitan area. From September 2003 until May 2006, his hourly rate was $285 an hour; from June 2006 until April 2007, his hourly rate was $350 an hour; and from May 2007 to the present his hourly rate is $375 an hour. From September 2003 until February 2005, Wyrsch billed $21,831.[7] From April 2005 until January 2006, Wyrsch's attorneys' fees are split in half because the parties agreed to split the deposition costs between their state and federal cases. In

---

[3]This represents 7.5 hours billed at $65 an hour.

[4]This represents 1.4 hours billed at $150 an hour plus 1.7 hours billed at $125 an hour.

[5]This represents 0.5 hours at $150 an hour plus 1.1 hours at $125 an hour.

[6]This represents 0.4 hours at $40 an hour.

[7]This represents 58.6 hours at $285 an hour.

total, these billings amount to $47,409.75.[8]  Finally, Wyrsch billed $22,746 from March 2006 until May 2007.[9]  Combined, Wyrsch's total billings equal $91,986.75.

From September 2003 to May 2007, J. Justin Johnston served as co-counsel of record for Defendant.  Over the course of the litigation, his billing rate ranged from $150 to $220 an hour.[10]  In total, he billed $103,202.50.[11]  Keith E. Drill also provided legal services for Defendant.  His billing rate ranged from $250 to $300 an hour.  In total, he billed $12,517.50.[12]  Michelle Dorrance performed paralegal services for Defendant.  Her billing rate ranged from $90 to $110 an hour.  In total, she billed $17,037.50.[13]  Nathan Owings was a firm associate who provided additional legal services for Defendant.  His billing rate was $120 an hour.  In total, he billed $300.[14]

---

[8] This represents 332.7 hours at $285 an hour, divided in half by the split fee arrangement.

[9] This represents 24.1 hours at $285 an hour, plus 44.4 hours at $350 an hour, and 0.9 hours at $375 an hour.

[10] Johnston's hourly rate began at $150 an hour; from January 2005 to February 2006, his rate was $170 an hour; from April 2006 to May 2006 his rate was $180 an hour; from June 2006 to April 2007 his rate was $190 an hour; and from late April 2007 to May 2007 his rate was $220 an hour.

[11] This represents 210.4 hours at $150 an hour, plus 30.2 hours at $170 an hour, 388.1 hours at $170 an hour (however, these fees were split in half since they included depositions taken for both the state and federal cases), 26.9 hours at $180 an hour, 144.8 hours at $190 an hour, and 5.3 hours at $220 an hour.

[12] This represents 15.4 hours at $250 an hour, plus 27.1 hours at $250 an hour (however, these fees were split in half since they included depositions taken for both the state and federal cases), 14.4 hours at $275 an hour, 4.4 hours at $300 an hour.

[13] This represents 28.6 hours at $90 an hour, plus 4.3 hours at $95 an hour, 253.6 hours at $95 an hour (however, these fees were split in half since they included depositions taken for both the state and federal cases), 19.4 hours at $100 an hour, and 0.6 hours at $115 an hour.

[14] This represents 2.5 hours at $120 an hour.

Lastly, Defendant provides the affidavit of W. James Foland, a Kansas City, Missouri attorney. Foland is a principal in the law firm of Foland, Wickerns, Eisfelder, Roper & Hofer, P.C. and has over thirty years of litigation experience. In his affidavit, he states that as of 2008, his hourly rate is $350. The rate for a typical Kansas City associate attorney would range anywhere from $150 to $300 depending on the attorney's personal experience. The hourly rate for a paralegal would range anywhere from $85 to $125 an hour, again depending on the individual's experience.

Plaintiff has not objected to this motion. However, the Court notes that the Supreme Court in *Hensley* dictated that an award of attorneys' fees must be based on reasonable rates. 461 U.S. at 447. "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citing *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). "[T]he district court has the discretion to choose either current or historical rates so long as it explains how the decision comports with the ultimate goals of awarding reasonable fees." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007). "In the case of private attorneys, for example, where an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award." *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995). However, local rates are traditionally the baseline that courts use for awarding attorney's fees. *See Citizens Ins. Co. of America v. KIC Chemicals, Inc.*, 2007 WL 2902213 *5 (W.D. Mich. 2007) (citing *Hadix*, 65 F.3d at 536). "The appropriate rate, therefore, is not necessarily the exact value sought by a particular firm, but is rather the market rate in the

venue sufficient to encourage competent representation." *Gonter*, 510 F.3d at 618 (citing *Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 Fed. App'x. 498 (6th Cir.2006)).

Regarding the work performed by Vasseur and his associates, the Court adopts the number of hours worked and hourly rates provided by Vasseur in his affidavit. Plaintiff does not contest these hours and rates and they appear reasonable, if not low, in light of the customary standards of practice within the Court's venue. Applying the lodestar analysis, the Court finds that the invoices provided by Vasseur are sufficient to entitle Defendant to an attorneys' fee award of $17,804.68.

Regarding the work performed by Wyrsch and his associates, the Court adopts the number of hours worked by attorneys Wyrsch, Johnston, Drill, and Owings as presented in their affidavits; however, the Court declines to similarly adopt their hourly rates. Instead, the Court finds that a reasonable hourly rate of $200 an hour is appropriate for all four attorneys. The Court makes this determination based on a number of considerations. First, Vasseur's billing rate of $125 an hour provides the baseline of awarding attorneys' fees based on local rates. At the opposite extremity is the billing rate of $350 an hour, provided by Foland in his affidavit, whose independent hourly rate reflects the current market rate for a Kansas City lawyer with over thirty years of litigation experience. Second, the Court notes that this litigation has spanned over the course of four years, in which time an attorney's hourly rates may rise consistent with market forces, but also takes into consideration the fact that at no time did Vasseur's rate increase.

The Court reasons that $200 an hour represents a reasonable rate that comports with "the market rate in the venue sufficient to encourage competent representation." Two hundred dollars

an hour is likely high to start based on customary rates within the venue in 2003 and low compared to customary rates in 2008. The decision to apply this rate across the board has the disadvantage of lowering the hourly rate of an attorney such as Wyrsch, who has thirty-five years of litigation experience, and the advantage of increasing the hourly rate of an attorney such as Johnston, who began this litigation as a second-year associate.

For the foregoing reasons, the Court finds that applying a rate of $200 an hour is reasonable in reaching the goal of the lodestar analysis, which is to provide adequate compensation to attract competent counsel and yet avoid producing a windfall for attorneys. *See Gonter*, 510 F.3d at 616. Applying the lodestar analysis, Wyrsch and associates billed in total $191,280.[15] The Court leaves untouched the number of hours worked and hourly rate of Michelle Dorrance, Defendant's paralegal, awarding a total fee of $17,037.50 for her services. Combined, the amount of attorneys' fees awarded to Vasseur and associates, Wyrsch and associates, and Michelle Dorrance, is $226,122.18. The Court declines to adjust this award upward or downward based on the *Johnson* factors.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Coleman American Companies, Inc's Motion for Attorney's Fees is **GRANTED** in the amount of $226,122.18.

---

[15]Combined, this represents 956.4 hours at $200 an hour. Of this total, Wyrsch billed 294.4 hours, 166.64 hours of which represent time split between the state and federal depositions. Johnston billed 611.7 hours, 194.1 hours of which represent time split between state and federal depositions. Drill billed 47.8 hours, 13.6 hours of which represent time split between state and federal depositions. Owings billed 2.5 hours.